UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BMN ENTERTAINMENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JE'CARYOUS JOHNSON ENTERTAINMENT LLC and JE'CARYOUS JOHNSON, <br><br> Defendants. | Case No. 22 C 03741 <br><br> Judge Martha M. Pacold |

### MEMORANDUM OPINION AND ORDER

Plaintiff BMN Entertainment, LLC and defendants Je'Caryous Johnson and Je'Caryous Johnson Entertainment LLC (together, "Defendants") entered into an informal partnership to promote multiple comedy tours, including the No Cap Comedy Tour earlier this year. BMN alleges that after the No Cap Comedy Tour ended, Defendants wrongfully claimed ownership over the No Cap Comedy Tour trademark and used infringing versions of the No Cap Comedy Tour logo. BMN contends that these actions violated BMN's rights as well as interfered with BMN's plans to put on another No Cap Comedy Tour, without Defendants, later this year.

BMN filed this lawsuit against Defendants and moved for a temporary restraining order. [1]; [5].[1] Defendants opposed the motion for a temporary restraining order and filed motions to dismiss for lack of personal jurisdiction and improper venue. [19]; [20]. For the reasons that follow, Defendants' motion to dismiss for lack of personal jurisdiction is granted.

### BACKGROUND

Je'Caryous Johnson is a Texas citizen and the owner of Je'Caryous Johnson Entertainment, a Texas-based LLC. [1] ¶¶ 2–3, 15. Defendants and BMN began exploring potential partnerships in January 2021 and ultimately agreed to work together to put on a comedy tour in February and March 2021. *Id.* ¶¶ 15–18. BMN alleges that, to induce BMN to work with Defendants, Defendants falsely represented that they were interested in working with BMN on the comedy tour but

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the CM/ECF page number.

in fact intended to gain access to BMN's confidential business information. *Id.* ¶¶ 89–91.

The parties subsequently worked together on a second comedy tour, "promoted as the No Cap Comedy Tour" (the "Joint Tour"). *Id.* ¶ 19. For the Joint Tour, "BMN alone created the NO CAP COMEDY TOUR trademark" (the "Mark"). *Id.* BMN also owns the copyrights in related promotional materials (the "Copyrighted Materials"):





*Id.* ¶¶ 21–22. The Joint Tour took place between February and May 2022. *Id.* ¶ 19.

BMN later decided to put on a third comedy tour in September through December 2022 but "elected not to involve Defendants." *Id.* ¶ 23. "BMN had intended to promote this anticipated comedy tour to prospective attendees under the NO CAP COMEDY TOUR trademark." *Id.* ¶ 24. BMN began working on the tour, enlisting comedians and entering into contracts with entertainment venues. *Id.* ¶¶ 26, 105.

Entertainment venues working with BMN on its upcoming tour have reported to BMN that Defendants have contacted the venues and told them that Je'Caryous Johnson Entertainment "is the sole and exclusive owner of trademark rights in" the Mark. *Id.* ¶ 29. In response, the entertainment venues ceased

working with BMN. *Id.* ¶ 71. Defendants have also continued to use the Mark and Copyrighted Materials[2] since the end of the Joint Tour. *Id.* ¶¶ 36, 54.

BMN filed this lawsuit against Defendants, including claims for copyright infringement, false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), malicious interference with prospective economic advantage, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, fraudulent concealment, tortious interference with contract, and breach of fiduciary duty. BMN also seeks declaratory relief related to its rights in the Mark and Copyrighted Materials.

BMN moved for a temporary restraining order. [5]. Defendants opposed the motion and also filed motions to dismiss for lack of personal jurisdiction [19] and improper venue [20]. Because the court cannot issue a temporary restraining order unless it has personal jurisdiction over Defendants, the court must first address personal jurisdiction. *Am. Bridal & Prom Indus. Ass'n v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, 192 F. Supp. 3d 924, 930 (N.D. Ill. 2016).

## LEGAL STANDARD

"Once a defendant has moved for a dismissal based on the lack of personal jurisdiction, 'the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). "When a court does not hold an evidentiary hearing . . . the plaintiff must establish merely a *prima facie* case of personal jurisdiction." *Id.* To make this determination, the court "may consider affidavits and other documents outside the pleadings." *Sommese v. Am. Bank & Tr. Co., N.A.*, No. 11-CV-2827, 2012 WL 3006824, at *1 (N.D. Ill. July 23, 2012). The court "take[s] the plaintiff's asserted facts as true and resolve[s] any factual disputes in its favor." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010).

## DISCUSSION

Illinois's personal jurisdiction rules apply to BMN's claims. *See Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (applying Illinois law to case involving Lanham Act claims because, "[i]n a case involving federal question jurisdiction, a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant" and Lanham Act does not authorize nationwide service of

---

[2] The images used by Defendants are not identical to the Copyrighted Materials, *see* [1] ¶ 38, but for simplicity and ease of reference the court refers to the allegedly infringing works as the "Copyrighted Materials."

3

process (internal quotation marks omitted)); *Kipp*, 783 F.3d at 697 ("A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits."). Because Illinois "permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause," the controlling question "is whether the exercise of personal jurisdiction over the defendants comports with the limits imposed by federal due process." *Curry*, 949 F.3d at 393 (internal quotation marks omitted); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) ("[T]here is no operative difference between [Illinois and federal] constitutional limits.").

"Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts." *Mobile Anesthesiologists Chi.*, 623 F.3d at 444. BMN does not argue that Defendants are subject to general jurisdiction in Illinois, so only specific personal jurisdiction is at issue. [29] at 5–6.

The Seventh Circuit has identified "three 'essential requirements' for the exercise of specific jurisdiction over an out-of-state defendant." *Curry*, 949 F.3d at 398 (quoting *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 848 (7th Cir. 2019)).

> First, the defendant's contacts with the forum state must show that it purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state. Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Id.* (internal quotation marks omitted) (alterations in original) (quoting *Lexington Ins.*, 938 F.3d at 878). Specific "personal jurisdiction over the defendant must be established as to each claim asserted." *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040, 1049 (N.D. Ill. 2016); *Sunny Handicraft (H.K.) Ltd. v. Edwards*, No. 16 C 4025, 2017 WL 1049842, at *4 (N.D. Ill. Mar. 20, 2017).

Due to the particular nature of the parties' arguments and the contacts at issue, the court will address the second element first. Also, because it does not alter the outcome, the court will address Defendants together, even though "personal jurisdiction must be assessed separately as to each defendant." *Elayyan v. Sol Melia, SA*, 571 F. Supp. 2d 886, 895 (N.D. Ind. 2008).

### I. Suit-Related Contacts

When analyzing specific personal jurisdiction, the "second element is crucial—and '[a court] cannot simply aggregate all of a defendant's contacts with a state . . . as evidence of the constitutionally-required minimum contacts.'" *Matlin v.*

4

*Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) (quoting (*RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997)). "The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). "[T]he defendant's *suit-related* conduct must create a substantial connection with the forum State." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). In other words, "[s]pecific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state." *Id.*; *see, e.g.*, *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 578 (7th Cir. 2020) (holding that there was no personal jurisdiction because "Illinois consumers have virtually nothing to do with the defendants' interactions with Bosch, which are the foundation of J.S.T.'s trade secret claim"); *Viahart LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19 CV 8181, 2022 WL 1004412, at *3 (N.D. Ill. Apr. 4, 2022) ("The only sales relevant to the specific jurisdiction analysis are those related to Liyunshop's allegedly unlawful conduct—i.e., sales of the infringing product.").

Here, BMN has identified a number of different contacts that BMN contends are sufficient to support specific personal jurisdiction:

- Defendants use and display the Copyrighted Materials and Mark on their website that:
    - Promoted two Joint Tour shows in Illinois held in May 2022, [30];
    - Posted the statement "FALL 2022 NO CAP TOUR DATES ANNOUNCING SOON" online [29-4];
    - Includes a "Stay Connected" feature that allows a user to submit their contact information (cellphone number and/or email address) and a city of interest, including Chicago, [29-5];
- Defendants engaged in additional promotion for two Joint Tour shows in Illinois in May 2022, [29-1]; [29-3];
- As part of the Joint Tour, Defendants through their partnership with BMN contracted with an entertainment venue in Chicago that generated roughly $750,000 in ticket sales, [19-1] ¶ 14; [29-6].
- Another of Defendants' websites lists the "No Cap Comedy Tour" as one of many "Past Shows," [26-4];
- Defendants used their publicly-accessible "No Cap Comedy Tour" Instagram to post a video that used the Mark and Copyrighted Materials accompanied by the message: "Where should we go next!?!? Drop your city below" with the hashtag "#nocapcomedytour," [26-9];
- Defendants are currently selling tickets for the We Outside Comedy Tour, put on by Defendants without BMN's involvement, in Chicago in September 2022, [29-7];
- Defendants sent letters to entertainment venues asserting ownership of the Mark, [1] ¶¶ 74, 82, 107, 120.

5

Defendants do not dispute that their use of the Mark and Copyrighted Materials through various online websites, as well as the letters sent to entertainment venues, are related to BMN's claims. But Defendants contend that their conduct related to the Joint Tour and upcoming We Outside Comedy Tour are not part of the basis for BMN's claims. BMN asserts that its injuries generally "arise out of Defendants' web-based contacts with Illinois residents" but does not explain how any of its particular claims are premised upon or related to Defendants' conduct tied to the Joint Tour or the sale of tickets for the We Outside Comedy Tour. [29] at 12.

Nor can the court discern a connection. Defendants' conduct related to the Joint Tour, including promoting the Joint Tour and contracting with an entertainment venue through the parties' partnership for shows in Chicago, does not appear to be related to any of BMN's claims. *See* [19-1] ¶ 14; [29-1]; [29-3]; [29-6]; [30]. BMN alleges that the parties entered a joint venture to promote and hold the Joint Tour between February and May 2022. [1] ¶¶ 17–19. Under their agreement, all of the parties would "help with promoting the tour." *Id.* ¶ 18. BMN neither alleges nor argues that Defendants' use of the Mark or Copyrighted Materials in connection with the Joint Tour violated BMN's copyright or trademark rights. Indeed, the complaint acknowledges that Defendants were authorized to use the Mark for the Joint Tour. [1] ¶ 51 ("The Parties began using the NO CAP COMEDY TOUR mark together as part of the Parties' No Cap Comedy Tour joint business venture in or around January[] 2022."); *id.* ¶ 53 (acknowledging that "the Parties were jointly using the NO CAP COMEDY TOUR trademark to promote" the Joint Tour). Instead, the complaint bases its claims only on "Defendants' independent use of the NO CAP COMEDY TOUR trademark" after Defendants and BMN were "no longer working together." *Id.* ¶ 54; *see also id.* ¶¶ 55, 62 (similar). BMN's malicious interference and consumer fraud claims also focus on Defendants' actions taken with respect to BMN's planned fall tour, not the Joint Tour. *Id.* ¶¶ 67–76, 82–86. And promotion of the Joint Tour, as well as the May 2022 shows in Chicago, does not appear to have any connection to BMN's fraudulent inducement claim that is based upon false representations allegedly made to BMN in January 2021. *Id.* ¶ 89. Defendants' promotion of the Joint Tour and the Joint Tour shows in Chicago in May 2022 are therefore not suit-related and cannot be used to established specific personal jurisdiction.

The same is also true for Defendants' sale of tickets for the upcoming We Outside Comedy Tour show in September 2022. BMN's evidence for this conduct consists of a screenshot from a third-party website to purchase tickets for the We Outside Comedy Tour show on September 30, 2022, in Chicago. [29-7]. Neither the Mark nor the Copyrighted Materials appear on the page, nor does BMN present any evidence or allegations that connects the We Outside Comedy Tour and Defendants' alleged use of the Mark or Copyrighted Materials. At most, BMN generally asserts that Defendants are "seek[ing] to leverage the success of the [Joint] Tour for purposes of the" We Outside Comedy Tour. [29] at 7–8. For example, Defendants'

website lists the Joint Tour as a "Past Show[]" on the same page as it advertises the We Outside Comedy Tour. [26-4]. But BMN presents no evidence showing that (1) ticket purchasers for the We Outside Comedy Tour "saw [Defendants' allegedly infringing] post[s] before making their purchases" or (2) "thought that" the We Outside Comedy Tour was the same as the Joint Tour or was being put on by BMN or Defendants jointly with BMN (as the Joint Tour was).[3] *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 801 (holding in trademark infringement action that sales into forum state were not relevant because the plaintiff presented no evidence that purchasers relied upon or were deceived by allegedly infringing posts on defendant's website); *Sullivan v. Bickler*, 360 F. Supp. 3d 778, 785 (N.D. Ill. 2019) ("Although these photographs indicate that Bickler performed in Illinois, they do not establish that Bickler used the 'Survivor' mark while he was doing so. Accordingly, Plaintiffs have failed to set forth a 'substantial connection' between Bickler's alleged use of the 'Survivor' trademark and his activities in Illinois." (quoting *Walden*, 571 U.S. at 284)). BMN also does not connect Defendants' sale of tickets for the We Outside Comedy Tour to its fraudulent concealment, malicious interference, and other claims. Thus, because the sale of tickets for the We Outside Comedy Tour is not tied to BMN's claims, such conduct is unrelated to this suit and irrelevant for purposes of specific personal jurisdiction.

Accordingly, the only suit-related contacts are Defendants' use of the Mark and Copyrighted Materials on various websites after the Joint Tour concluded and letters to entertainment venues regarding ownership of the Mark.

## II. Purposeful Availment

Next, BMN must show that Defendants' suit-related activity—sending letters to entertainment venues claiming ownership of the Mark and using the Mark and Copyrighted Materials on Defendants' websites—was "purposefully directed at Illinois." *Curry*, 949 F.3d at 398. "The essential point of the inquiry is to ensure that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state." *Id.* (internal quotation marks omitted). "'[P]urposeful direction' may be shown by evidence that the defendant's actions, even if initiated outside of the forum state, nevertheless were directed at the forum state." *Id.* Merely "knowing that [the plaintiff] is located in Illinois" and taking actions outside Illinois that affect the plaintiff is insufficient "because 'the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.'" *Ariel Invs., LLC v.*

---

[3] Even if BMN had shown that the We Outside Comedy Tour event in Chicago was a predicate for any of its claims, BMN has not established that any tickets have been sold for the event. Without evidence of actual sales tied to Defendants' allegedly unlawful conduct, this conduct is insufficient to establish specific personal jurisdiction. *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 801.

*Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) (quoting *Walden*, 571 U.S. at 285); *Advanced Tactical Ordnance Sys.*, 751 F.3d at 802 (holding that district court erred in finding specific personal jurisdiction based upon defendant knowing "that [the plaintiff] was an Indiana company and could foresee that its misleading emails and sales would harm [the plaintiff] in Indiana").

BMN has not shown that Defendants' suit-related activity was purposefully directed at Illinois. First, BMN has not established that Defendants' letters to various entertainment venues were directed at Illinois. Defendants, in Houston, directed their attorneys in Massachusetts to send the letters to entertainment venues outside of Illinois. [19-1] ¶ 24; *see also* [1] ¶ 105 (identifying venues in Pennsylvania, Virginia, and Florida); [1-4] (letter to venues). The only apparent connection between the letters and Illinois is that they affected BMN, and Defendants knew BMN was based in Illinois. This is insufficient to constitute purposeful availment, as merely "knowing that [BMN] is located in Illinois" is not enough. *Ariel Invs.*, 881 F.3d at 522; *Advanced Tactical Ordnance Sys.*, 751 F.3d at 802; *Mobile Anesthesiologists Chi.*, 623 F.3d at 447–48.

Second, Defendants' display of the Mark and use of the Copyrighted Materials on various websites also do not constitute purposeful availment. "Significant caution is certainly appropriate when assessing a defendant's online contacts with a forum 'to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state.'" *Curry*, 949 F.3d at 400 (quoting *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010)). A defendant must go "[b]eyond simply operating an interactive website that is accessible from the forum state" and "must in some way *target* the forum state's market." *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011). "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *Id.* at 559.

BMN has not established that Defendants' suit-related online postings targeted Illinois. The only webpage that has any apparent connection to Illinois (aside from being accessible from Illinois) is Defendants' webpage "nocapcomedytour.com" that allegedly displays the Mark and Copyrighted Materials. [29-5]. The page includes a "Stay Connected" feature where a person can enter their email address and/or cellphone number and select a city from a dropdown menu—including Chicago—presumably to be sent messages about upcoming shows in that city. *Id.*

By expressly listing Chicago as a city a person can select, the webpage shows that Defendants were interested in doing business with persons in Illinois, but this alone is insufficient to establish personal jurisdiction for multiple reasons. First, BMN has submitted no evidence that any person in Illinois actually visited the website or used the "Stay Connected" feature, or that any person anywhere in the

8

country selected "Chicago" as a city of interest. *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 803 ("Having an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible."); *Rubik's Brand, Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 20-cv-5338, 2021 WL 825668, at *3–4 (N.D. Ill. Mar. 4, 2021) ("[D]isplaying products online that are shippable to Illinois amounts to nothing more than maintaining an interactive website that is accessible in Illinois. That alone cannot confer personal jurisdiction."). Second, even if someone from Illinois had visited the website and signed up for alerts or if someone selected Chicago, that still would not be enough because there is no evidence that Defendants ever actually sent any messages to anyone in Illinois or anyone who selected Chicago from the dropdown menu. *See be2*, 642 F.3d at 559 (holding personal jurisdiction did not exist where there was no "evidence of any interactions between Ivanov and the be2.net members with Illinois addresses"); *Rubik's Brand*, 2021 WL 825668, at *4 ("[S]o far as the record shows, no Illinoisan has ever even viewed the Yoyoly website with an eye to purchasing a product offered there. That an Illinoisan might someday find Yoyoly's website and decide to purchase a counterfeit Rubik's product from the site simply does not suffice to vest the Court with personal jurisdiction over Yoyoly." (emphasis omitted)). And, third, even assuming Defendants sent messages to persons in Illinois or who selected Chicago, that still would not be enough without additional evidence that those particular messages were targeted at Illinois. *Advanced Tactical Ordnance Sys.*, 751 F.3d at 803; *see id.* at 802–03 (in trademark infringement action, holding that "the sending of two allegedly misleading emails to a list of subscribers that included Indiana residents and the maintenance of an interactive website" was insufficient without more to establish personal jurisdiction); *be2*, 642 F.3d at 559 ("As far as we can tell from the documents submitted by be2 Holding, the 20 Chicagoans who created free profiles on be2.net may have done so unilaterally by stumbling across the website and clicking a button that automatically published their dating preferences online.").

Having concluded that Defendants' "nocapcomedytour.com" website and the evidence regarding the "Stay Connected" feature are insufficient, it necessarily follows that Defendants' other websites and online posts, [26-4]; [26-9]; [29-4]—that do not mention Chicago, Illinois, and for which there is no evidence they were in any way targeted at or directed to the Illinois market—also do not establish personal jurisdiction. Indeed, BMN presents no evidence that any person from Illinois has ever viewed or accessed these online posts. Defendants' posts on their website and Instagram page are merely interactive webpages accessible to persons in Illinois and other states. *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 803. BMN responds that Defendants "knew BMN had many professional relationships in Chicago" and that Defendants' use of the Mark and Copyrighted Materials interfered with those relationships, but there is no evidence that Defendants expressly aimed their conduct at disrupting BMN's unidentified Illinois-based relationships. Even if Defendants were generally aware of such relationships, the

record lacks evidence that Defendants targeted those specific Illinois-based relationships, and general awareness alone is insufficient. *See Ariel Invs.*, 881 F.3d at 522.

In support of personal jurisdiction, BMN relies upon the Seventh Circuit's opinions in *NBA Properties, Inc. v. HANWJH*, No. 21-2909, 2022 WL 3367823 (7th Cir. Aug. 16, 2022), and *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010). Neither case is on point here. In *NBA Properties*, the defendant—the owner of an online store—"unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so" and then "filled [an] order, intentionally shipping an infringing product to the customer's designated Illinois address." 2022 WL 3367823, at *7. *Hemi* is similar: the defendant intentionally shipped approximately three hundred packs of cigarettes to Illinois. 622 F.3d at 755, 757–58. Here, unlike the defendants in *NBA Properties* and *Hemi* group, there is no evidence of *any* suit-related contacts between Defendants and anyone in Illinois. *See Rubik's Brand*, 2021 WL 825668, at *3–4 (distinguishing *Hemi* where the defendant "display[ed] products online that are shippable to Illinois" but "made no sales to Illinois residents"). Defendants displayed the Mark and Copyrighted Materials online but there is no evidence Defendants targeted their online posts to persons in Illinois, or that anyone in Illinois ever viewed them. For the reasons explained above, this is insufficient to support personal jurisdiction.

Altogether, BMN has not shown that Defendants purposefully availed themselves of Illinois through their suit-related contacts. The court therefore lacks specific personal jurisdiction over Defendants.

## CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction is granted, and the case is dismissed without prejudice. Defendants' motion to dismiss for improper venue or transfer [20] is denied as moot. BMN's motion for temporary restraining order is denied. Enter final judgment. Civil case terminated.


Dated: September 7, 2022          /s/ Martha M. Pacold